Donald T. McMillan, SBN 134366
Peter J. Walls, SBN 148256
McMILLAN & SHUREEN LLP
50 Santa Rosa Avenue, Suite 200
Santa Rosa, CA 95404
(707) 525-5400
(707) 576-7955 (Fax)

Attorneys for Defendant LOUIS RIGAUD,
Doing Business As HALUS POWER SYSTEMS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TDX POWER SERVICES, LLC, An Alaska Limited Liability Company,<br><br>                        Plaintiff,<br><br>           vs.<br><br>LOUIS RIGAUD, Doing Business As HALUS POWER SYSTEMS, WELLS FARGO BANK, N.A.,<br><br>                      Defendants. | CASE No. CV 12 4419PJH<br><br>Complaint filed: 8/22/2012<br><br>**NOTICE OF SETTLEMENT AND STIPULATION TO CONTINUE JURISDICTION OF THE COURT TO ENFORCE SETTLEMENT**<br><br>The Honorable Phyllis J. Hamilton |

Pursuant to Northern District Local Rules 6-1(b), 6-2, and 7-11 and Federal Rule of Civil Procedure 41(a)(2), IT IS HEREBY STIPULATED by and between the parties to this action that the Case Management Conference currently scheduled before the Honorable Phyllis J. Hamilton on August 15, 2013, be discontinued.

IT IS FURTHER STIPULATED BY THE PARTIES that pursuant to Federal Rule of Civil Procedure 41(a)(1)(2), and the parties' Settlement Agreement dated July 8, 2013, a copy of which is attached this Notice, that Plaintiff's Complaint and Defendant's Counter-claim are deemed resolved contingent upon the parties' mutual performance of their respective duties and obligations provided for in the Settlement Agreement, and that this Court shall retain jurisdiction over the parties to enforce the terms and provisions of the Settlement Agreement, if necessary. Upon full performance by the parties of their

1

1  respective obligations set forth in the Settlement Agreement, the parties shall file a further

2  stipulation with this Court requesting the Court to dismiss Plaintiff's Complaint and

3  Defendant's Counter-Claim with prejudice.

4  The Parties also wish to advise the Court that they have selected Brent Reardon of GL

5  Garrard Hassan, a renewable energy consulting firm, to serve as the Parties' third party

6  expert for resolution of technical disputes, per the terms of the Settlement Agreement.

7  DATED:  July 24, 2013                    McMILLAN & SHUREEN LLP

8

9                                           By

10                                              Peter J. Walls
                                               Attorneys for Defendant LOUIS RIGAUD dba
11                                             HALUS POWER SYSTEMS

12

13  DATED:  July 25, 2013                   ABBEY, WEITZENBERG, WARREN & EMERY
14                                          and Robert J. Rauch, Esq.

15

16                                          By
17                                             Attorneys for Plaintiff

18

19  PURSUANT TO STIPULATION, IT IS SO ORDERED.  THE CASE MANAGEMENT
20  CONFERENCE IS CONTINUED TO MARCH 13, 2014 AT 2:00 P.M.  THE
21  CASE MANAGEMENT CONFERENCE WILL BE VACATED IF A STIPULATED
22  DISMISSAL IS FILED IN ADVANCE OF CASE MANAGEMENT CONFERENCE.

23  Date:  July 29, 2013

24                                          Phyllis J. Hamilton, Judge
                                            United States District Court, Northern
25                                          District of California

26

27

28                                          2

NOTICE OF SETTLEMENT AND STIPULATION TO CONTINUE JURISDICTION OF THE COURT TO
ENFORCE SETTLEMENT

## Settlement Agreement

This Settlement Agreement ("Settlement Agreement") is entered into this 8th day of July, 2013 ("Effective Date") by and between TDX Power Services, LLC, an Alaska limited liability company, with its principal offices located at 615 E. 82nd Ave. Suite 200, Anchorage, Alaska 99518  ("TDX") and Louis Rigaud, a resident of California, d/b/a "Halus Power Systems," with its principal offices located at 2539 Grant Avenue, San Leandro, California, 94579 ("Rigaud" or "Halus").  TDX and Halus are sometimes hereinafter referred to herein collectively as the "Parties" and individually as a "Party."

### *Recitals*

**Whereas**, TDX and Halus have previously executed that certain Sales Agreement dated August 30, 2009 ("Original Agreement") pursuant to which TDX agreed to purchase from Halus six re-manufactured Vestas V-27 225 Kw, 60 Hz, 480 Volt wind turbines and associated equipment ("Turbines"); and

**Whereas**, Halus acknowledges that TDX has already paid a total of $1,020,200 against the total purchase price of $1,848,000 for the Turbines; and

**Whereas**, various disputes have developed between the Parties regarding their respective responsibilities under the Original Agreement, and litigation was instituted by TDX against Halus in the U.S. District Court for the Northern District of California in August of 2012 (No. CV 12-04419PJH) (hereinafter the "Litigation"); and

**Whereas**, the Parties desire by this Agreement to settle their outstanding disputes and resolve all of the issues in the pending Litigation; and

**Whereas**, this Settlement Agreement will serve to amend the Original Agreement, and shall be enforceable by the U.S. District Court, per the terms set out below; and

**Whereas**, the terms of this Settlement Agreement supersede any contrary terms contained in the Original Agreement; and

**Whereas**, upon completion of their respective responsibilities under this Settlement Agreement, the Parties will jointly move to dismiss the Litigation with prejudice; and

**Whereas**, the Parties desire that the U.S. District Court retain jurisdiction over the Parties to enforce and interpret the terms of this Settlement Agreement, including the right of TDX and Halus to seek specific performance of each other's obligations hereunder;

1

**Now therefore**, in consideration of the mutual covenants contained herein, the receipt and sufficiency of which are acknowledged by both Parties, the Parties hereby agree as follows:

1. **Agreement re Refurbishment of the Six V-27 Wind Turbines.** The Parties have agreed that Halus will complete the refurbishment of the six V-27 wind turbines (Turbines) covered by the Original Agreement per the terms set out herein. Refurbishment and acceptance of the Turbines will be governed by the specifications and procedures set out in Exhibit A to this Settlement Agreement. Concerning inspections by TDX during the remanufacturing process as provided for in Exhibit A, Halus shall provide TDX with notice of the respective components being available for inspection and TDX shall complete its inspection of the component within 14 days of the notice by Halus. Resolution of any disputes regarding required refurbishment activities and acceptance will be resolved by the third party expert referenced in Exhibit A, who has been mutually agreed by the Parties. Any Turbine meeting the specifications set out in Exhibit A to this Settlement Agreement in the opinion of the third party expert shall be deemed accepted by TDX for all purposes. The decision of the third party expert will be final and binding on both Parties, and the Parties shall share equally the cost of such third party expert.

2. **Revised Delivery Schedule.** Delivery of the Turbines shall be in accordance with the schedule set out as Exhibit B hereto. In the event that Halus is late in delivering one or more of the refurbished turbines, it agrees to pay TDX, as liquidated damages, and not as a penalty, an amount equal to $200 per day for each day of delay, per turbine. Such amount, if any, may be set off against amounts due Halus upon delivery of each turbine. In the event that delivery of one or more of the Turbines is delayed by more than 45 days for reasons other than force majeure, TDX shall have the right to declare Halus in default of its obligations under this Settlement Agreement, and may seek such remedies as it deems appropriate from the Court, including, but not limited to, specific performance.

3. **Payment.** Halus shall issue an invoice to TDX when a Turbine is available for acceptance. Within 30 days of the invoice date, TDX will inspect the Turbine, accept or reject it and if accepted, make payment on the invoice and acceptance shall be deemed complete and title to the Turbine will pass to TDX. The balance due on each turbine, per the terms of the Original Agreement, is $137,966.66. To the extent that Halus has incurred additional costs expressly authorized by Exhibit A, such costs shall be reimbursed at the labor and material rates set out in Exhibit C hereto based on submission of reasonable documentation of such costs. Such costs shall be added to the balance due for each Turbine, and paid within 30 days of acceptance of the Turbine by TDX. In the event of a dispute between TDX and Halus as to whether a Turbine meets the applicable standards set out in Exhibit A, TDX may withhold payment for such Turbine until the decision of the third party expert has been issued.

2

4.      **Initial Payment to Halus upon Execution of this Agreement.**  TDX agrees to pay Halus, within two days of the execution of this Agreement the sum of $75,000 to cover Halus' prior claims for storage of the Turbines, stop work fees, and attorneys' fees incurred in the Litigation.   Such amount shall be non-refundable.

5.      **Continued Storage of Refurbished Turbines by Halus following Acceptance of such Turbines by TDX.**   If requested by TDX, and subject to TDX's payment for the Turbines, Halus agrees to store the Turbines at its facility until such time as TDX arranges for shipment.   TDX acknowledges and agrees that Halus' storage of the Turbines is an accommodation to TDX in connection with Halus' sale of the Turbines to TDX.   The rate per stored Turbine shall be $400 per month payable in advance on or before the tenth (10th) day of each calendar month, with partial months to be prorated and the storage period to not exceed 48 months. Turbine nacelle and control box storage shall be inside Halus' facility.   Halus shall use no less care in storing the Turbines than it uses in storing its own remanufactured turbines held for sale.   In the event that Halus is responsible for damage or loss to any stored Turbine, TDX's exclusive remedy shall be the repair or replacement of such Turbine by Halus within a commercially reasonable time period.   Turbine storage shall meet accepted industry standards, and protect the turbines against damage pending delivery to TDX.

6.      **Risk of Loss; Title; Goods Identified to Contract; Warranty.**  Risk of loss to each Turbine shall pass to TDX upon acceptance of such Turbine by TDX.   Title to each Turbine shall pass to TDX upon payment of all undisputed amounts due Halus for such Turbine. Halus warrants to TDX that it will convey to TDX good title to the turbines and all component parts upon transfer of title to TDX. The serial numbers for the Turbines are set out in Exhibit D to this Settlement Agreement and such Turbines are specifically identified as goods to which the contract refers for all purposes including the provisions of California Commercial Code Sections 2501 and 2502.   Halus agrees not to pledge the turbines as collateral for any financing obtained by Halus prior to delivery of all six refurbished turbines to TDX.   Halus warranties shall remain as set forth in the Original Agreement except regarding duration which shall be the sooner of one year from the time such Turbine leaves Halus' facility or twenty four (24) months from the date of execution of this Settlement Agreement.

7.      **Insurance.**

        A.      <u>Halus Insurance</u>. Halus shall maintain property insurance insuring for the full purchase cost against loss or destruction with a carrier rated A- or better by A.M. Best on each Turbine through acceptance of such Turbine by TDX.    Such insurance shall be in a form reasonably acceptable to TDX.   If permitted by the insurer without any increase to the premium, TDX shall be named as an additional insured on such policy, and shall be given a copy of the policy.   Halus will be

3

responsible for any deductibles, and the policy may not be cancelled without at least 30 days prior written notice to TDX.

      B.   <u>TDX Insurance</u>.  At the time of Turbine acceptance, TDX shall maintain property insurance insuring for the full replacement cost against loss or destruction with a carrier rated A- or better by A.M. Best on each Turbine following acceptance of such Turbine by TDX and while such Turbine remains at Halus' facility.  Such insurance shall be in a form reasonably acceptable to Halus.  Once title to the Turbines pass to TDX, TDX will be responsible for insuring the Turbines for loss and damage.

8.    **Assignment.**  Neither Party may assign its rights or obligations under this Settlement Agreement without the express written approval of the other Party, which approval may be withheld in the sole discretion of such Party.

9.    **Full Settlement; Release and Waiver; No Admission of Liability; Parties to Request Court to Retain Jurisdiction.**

      A.   <u>Full Settlement</u>.  Each Party represents and warrants to the other that this Settlement Agreement contains a full and complete settlement of all claims set out or that could have been set out in the Litigation including, without limitation, TDX's claims that Halus did not have title to or possession at its facility of the Turbines within the time periods provided in the Original Agreement, that the Original Agreement was rendered null and void for any reason, or that Halus had provided TDX with a security interest in the Turbines, each of which are denied by Halus (collectively, the "Claims").

      B.   <u>Release and Waiver</u>.  The Parties intend this Agreement to be a full, general and mutual release and to constitute a full and final accord and satisfaction extending to the Claims, including those claims which they do not know or suspect to exist in their respective favor at the time of the execution of this Agreement.  The Parties, having been informed of the significance and consequences of the following waiver by their respective attorneys, each expressly and knowingly waive any and all rights they may have under any statute, code, ordinance or the common law, which may limit or restrict the effect of a general release as to released claims which they do not know or suspect to exist in their respective favor at the time of the execution of this Settlement Agreement, including, to the extent deemed applicable, all rights under California Civil Code Section 1542, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him, must have materially affected his settlement with the debtor."

4

C.   No Admission of Liability.   Nothing contained herein shall be construed to be an admission of any kind by any Party hereto other than the respective obligations of the Parties under this Settlement Agreement.

D.   Parties to Request Court to Retain Jurisdiction.   Upon the execution of this Settlement Agreement, the Parties shall jointly file a motion pursuant to Federal Rules of Civil Procedure 41(a)(2) requesting the U.S. District Court to retain jurisdiction over the Parties to enforce and interpret the terms of this Settlement Agreement, including the right of the Parties to seek specific performance of each other's obligations under this Settlement Agreement.

10.   **Breach.**   No breach of any duty or obligation of a Party hereunder shall entitle the other Party to rescind or terminate this Settlement Agreement.  In any action to enforce the provisions of this Settlement Agreement, the prevailing party shall recover its reasonable attorney's fees and costs.

11.   **Mistakes of Fact or Law.** In entering and making this Settlement Agreement, the Parties assume the risk of any mistake of fact or law.  If the Parties, or either of them, should later discover that any fact they relied upon in entering this Settlement Agreement is not true, or that their understanding of the facts or law was incorrect, such Party shall not be entitled to seek rescission of this Settlement Agreement by reason thereof.  This Settlement Agreement is intended to be final and binding upon the Parties regardless of any mistake of fact or law.

12.   **Successors and Permitted Assigns.** This Settlement Agreement shall be binding upon, and inure to the benefit of any of, the Parties and their respective successors and assigns.  Nothing in this Settlement Agreement shall be construed or interpreted to impart any rights or obligations to any third party (other than a permitted successor or assignee bound to this Settlement Agreement).

13.   **Representations and Warranties of the Parties re Effective Legal Representation.** Each Party represents and  warrants to the other Party the following: (1) it has been represented by competent counsel with respect to this Settlement Agreement and all matters covered by it and (2) it has been fully advised by said counsel with respect to its rights and obligations and with respect to the execution of this Settlement Agreement.

14.   **Entire Agreement.** Each Party warrants to the other that no promise, inducement or agreement not expressed herein has been made in connection with this Settlement Agreement.  This Settlement Agreement and its exhibits, each of which are incorporated herein by this reference, together with the Original Agreement, a true and correct copy of which is attached as Exhibit E, constitutes the entire agreement between the Parties and supersedes and replaces all prior negotiations or proposed agreements, written or oral with respect to the subject matter hereof. The terms of this Settlement Agreement shall supersede any contrary terms contained in the Original Agreement including, without limitation, the first

5

two paragraphs set forth on page 2 of the Original Agreement, which paragraphs are superseded in their entirety.

15.   **Amendments**. The language of this Settlement Agreement may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by an authorized representative of each of the Parties.

16.   **Construction.** The language of this Settlement Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for or against either Party, regardless of who drafted or was principally responsible for drafting this Settlement Agreement or any specific terms or conditions hereof.   This Settlement Agreement shall be construed as having been drafted by both Parties, and neither Party shall claim otherwise.

17.   **Headings**.  The headings in this Settlement Agreement are for convenience only and in no way limit, alter or affect the meaning of this Settlement Agreement.

18.   **Governing Law; Enforcement**.   This Settlement Agreement shall be construed and enforced pursuant to the laws of the State of California.  The Parties agree that any dispute between them concerning their performance under this Settlement Agreement shall be resolved by the U.S. District Court for the Northern District of California which is expressly authorized by the Parties to enforce this Settlement Agreement as part of the current Litigation.  Upon full satisfaction of the respective responsibilities of the Parties, the Parties will jointly petition the U.S. District Court for dismissal of the Litigation with prejudice.

19.   **Illegality.** Should any provision of this Settlement Agreement be held illegal, such illegality shall not invalidate the whole of this Settlement Agreement; instead, the Parties shall use their best efforts to reform the Settlement Agreement in order to give effect to the original intention of the Parties in all material respects.

20.   **Execution in Counterparts**. This Settlement Agreement may be executed in multiple original and/or electronic counterparts, each of which shall be equally admissible in evidence and shall be deemed to be one and the same instrument. Any signature page of this Settlement Agreement may be detached from any counterpart of this Settlement Agreement without impairing the legal effect of any signatures thereon, and may be attached to another counterpart of this Settlement Agreement identical in form hereto but having attached to it one or more signature pages. This Settlement Agreement shall not take effect until each Party has signed a counterpart, and the U.S. District Court has accepted jurisdiction over enforcement of this Settlement Agreement.

21.   **Certain Representations and Warranties**. Each Party represents and warrants that it has the full power and authority to enter into this Settlement Agreement and to perform the transactions, and its respective duties and obligations herein set forth. Each signatory to this Settlement Agreement who signs

6

on behalf of a Party represents and warrants that he or she has the authority to sign on behalf of such Party.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed by their duly authorized representatives as of the Effective Date.

**TDX Power Services, LLC**

By: Mark Huber
     Interim President and CEO

**Halus Power Systems**

By: Louis Rigaud

**Exhibit A: Refurbishment Specifications**

**Scope of Refurbishment for Six TDX Power V-27 Wind Turbines**

**Coatings – Overview**

Multi-component Dupont or equivalent industrial finishes applied to most surfaces including tower, blades, nacelle, yaw motors, yaw gears, brake system, and all other exposed components. Multi-component coatings used are equal or superior in quality and color to those used on new commercial MW class turbines. Dupont or equivalent industrial finishes primer and topcoat used on all newly painted parts. In many cases, coatings are applied to original parts which were uncoated, such that coatings applied, exceeds original manufacturer specifications. Coatings used will provide lasting protection in most environments, including coastal climates.
Mechanical and chemical surface preparation prior to application of coatings includes a combination of mechanical and chemical processes (sanding, sand blasting, solvent cleaning, solvent-based hot water high pressure washing, and solvent etching).

Prior to application of finishes, Halus shall provide TDX the opportunity to inspect the components within a reasonable timeframe (14 days), agreeable to both parties. Inspection items to be: Towers after welding, bed plate, and hub.

Threaded bolt holes, structural flanges, and equipment nameplates shall be clean, smooth, and free of paint.

**Blades** (See additional notes at end of modified Spec.)
1) TDX to perform the required NDT of the blades, and any defects/deficiencies found must be corrected by Halus.
2) Repair structural and cosmetic damage to blades.
3) Inspect and either rebuild or replace blade bearing, as per Vestas maintenance manual and document condition.
4) Replace (as opposed to repair) seal between blade root and blade.
5) Surface prep, re-coat surface to smooth surface.

**Note:** Blades used are from matched original sets. Original sets have been matched by weight and balanced by Vestas (or other original manufacturer) at time of manufacture. Each blade shall be clearly marked to allow field crews to identify match sets.

**Brake / Hydraulic System**

1) Overhaul or replace security pressure sensor.
2) Overhaul or replace working pressure sensor.
3) Overhaul or replace brake solenoid.

8

4) Calipers are overhauled using parts supplied by original manufacturer or equivalent
5) Brake pump motor meg tested and replaced if weak.
6) Brake accumulators pressure tested and replaced if faulty, and recharged with Nitrogen.
7) Hydraulic system to be flushed, bled, and filled with new brake fluid.
8) Inspect Hoses, compression fittings, wiring and replace as needed.
9) Inspect and test Brake sensor / switch and replace if needed.
10) Inspect, test and replace as needed, (as opposed to repair) all wiring for brake switch and hydraulic security and working sensors, from component to controller.
11) Inspect and test Hydraulic Motor wiring and replace as needed.
12) Inspect Brake junction box, compression connectors and replace if required.
13) Brake pads replaced.
14) Check brake disk for thickness, warping, cracks and surface damage. Replace if necessary
15) Connect Pitch/Brake system to top controller and main controller and run step test, sin test, and other standard pitch startup tests.

**Pitch System**

1) Check hydraulic cylinder. Verify operation of pitch system, including accumulator pressure, solenoid valves, and zero position.
2) Change hydraulic filter and air filter.
3) Replace transverse tube front and rear bushings as required
4) Test carrying tube bearing, pitch bearing, and link bearings for proper clearance, as recommended by Vestas. Repair or replace as required.
5) Replace Rod seal and bearings.
6) Replace Pitch Rod Sliding shoes, as necessary
7) Regrind and re-chrome pitch rod cylinders.
8) Realign pitch rod.

**Nacelle Cover**

1) Cover cleaned, repaired as necessary, and painted inside and out.
2) Cover bracket bolts replaced and cover alignment performed.
3) Cover insulation to be provided to match Vestas maintenance and service manual section 18 item 9 specifications.

**Nacelle Bedplate**

1) Inspect hot dipped galvanizing coating then mechanical and chemical surface prep.
2) Nacelle-to-cover Dampening supports checked and replaced as necessary.
3) Apply anti-slip to main walking surfaces for operator a maintenance safety.
4) Inspect and replace original supplied Auto Lube cups

**Tower**

1) Mechanical and chemical surface prep prior to coating application.
2) Platforms, and tower components surface prepped, coated, painted and installed.
3) Tower sections shall be clearly marked to allow field crews to identify matched sets.
4) All Welding to be performed by qualified and certified welders and UT weld test to be provided.

**Gearbox** (See additional Notes at end of revised specification with respect to those gearboxes that have already been refurbished)

1) Gearbox overhaul and parts replacement as necessary such that only gears, pinions and other parts in new, excellent, or very good condition are re-deployed. Shim and tensioning as necessary. All interior parts cleaned prior to replacement of gear oil.
2) High resolution digital photos available for each gear box by serial number clearly showing condition of high speed, intermediate, and low speed gears, pinions, and bearings.
3) Written gearbox assessment and refurbishment plan provided to customer.
4) Gearbox gasket replaced (as opposed to repaired).
5) Gearbox cover bolts replaced.
6) High speed gear to be rebuilt or if requested by TDX replaced and quoted separately.
7) High speed shaft bearings to be rebuilt or if requested by TDX replaced and quoted separately.
8) Replace other components as required to meet "new, excellent, or very good" condition assessment.
9) Revise nameplate, if required, to specify the correct gear ratio if the gear ratio was changed to convert from 50 Hz to 60 Hz.

**Gear Oil System**

1) Flush and clean system, including cooler (if cooler originally installed).
2) Replace synthetic transmission fluid hoses to cooling system
3) Test Cooling system after remanufacturer, if equipped.
4) Check pump, pressure and temperature sensors, if equipped.

5) Check cooler fan operation, if the turbine originally came with pump mounted fan.
6) Provide gear oil in accordance with Vestas specifications or equivalent and climate being shipped to.
7) Replace all gasketed fittings and hoses of the gear oil system.
   Replace filter.

## Electrical

1) Test all wiring and sensors with rebuilt turbine hooked up to main and top controller except main generator. Main generator will be bench tested separately as a motor after generator rebuild.
2) Replace junction boxes, terminal blocks, and compression fittings as required.
3) Control wiring shall be inspected and replaced as necessary

## Generator

1) Recondition winding as necessary including dip and bake with 100% epoxy. Clean stator and end bells, dynamically balance rotating element, replace bearings, steam clean all parts, and apply new coating.
2) Revise nameplate rating for new conditions (60Hz), if required.
3) Bench test main generator separately as a motor after main generator rebuild.

## High Speed Shaft

1) OEM cardan (Flange coupling) joints repacked with new grease.
   Inspect the joints, rubber sleeves, packing, "all flange fasteners", spring plates and the flanges. Repair or replace as required. Clean and paint high speed shaft.
2) Replace high speed shaft bolts and reassemble per Vestas maintenance manual.
3) Re-align high speed shaft with gear and generator surfaces according to manufacturer tolerances.
4) Inspect and rebuild slip coupling as required, then Adjust slip coupling to Vestas specifications.

## Main Shaft

1) Main shaft purged of old grease, cleaned, inspected and repaired or replaced as necessary.
2) Main shaft bearings already assembled, will be subject to bore scope and tolerance check.  Main shaft bearings yet to be installed subject to third party inspection by TDX.

11

**Controller**

1) Original microprocessor controller inspected, overhauled with 100% functional parts, or replaced with new, and tested.
2) All components shall be tested for compatibility and proper operation
3) Top and Bottom controllers shall be tested and fully compatible with other controllers and systems within the turbine.

**Yaw motor/gear Mechanism**

1) Overhaul worm gear, planetary gear, motor.
2) Overhaul using approved parts supplied by original manufacturer, sand blast, apply new coating.
3) Replace yaw gear as needed
4) Test Yaw system under load
5) Radial and Axial adjustment of yaw bearings, and adjustment of yaw finger pads in accordance with Vestas manual.

**Misc. Sensors**

1) Inspect and test anemometer and wind vane and replace if needed.
2) Verify functionality of all sensors.

**Hardware**

1) All structural bolts/washers/nuts/other fasteners (hardware) inspected and replaced as needed, and replaced with new if Vestas maintenance and service manual calls for new structural Bolts and fasteners, where reuse of old structural fasteners is not allowed. These new fasteners will equal to or exceeding strength class and size of original bolts. Metric bolts are used in keeping with original configuration. All structural hardware shall meet the requirements specified by Vestas, including size, strength, and material.

Note: Fasteners not required to be replaced by Manufacturer, and not listed in Halus refurbishment scope, will be priced out as listed below as an option.

If bolts are removed during the refurbishment process, then replace with new. Also if specified in the Vestas Maintenance Manual, replace with new.

Structural fasteners include the bolts, washers, and nuts, for the following connection points:
- tower sections
- yaw top to tower Fasteners
- nacelle bedplate to yaw Finger
- nacelle to main shaft
- nacelle to generator
- nacelle to gearbox
- blade to blade bearing
- blade bearing to hub
- hub to main shaft
- main shaft to gearbox, for those gear boxes already rebuilt leave as rebuilt.  For gearboxes yet to be rebuilt, replace main shaft to gearbox structural fasteners.
- gearbox to high speed shaft
- high speed shaft to generator
- brake caliper Mounting Fasteners, Brake rotor mounting fasteners
- yaw gear internal bolts
- brake housing to nacelle
- yaw motor internal bolts
- yaw motor to yaw gear

**Notes:**

The following notes are intended to provide a further explanation of the modifications proposed by TDX to the specification provided by Halus.  These notes also set out the additional testing that TDX proposes to conduct for those components that have already been refurbished, or are partially refurbished.

**General**

As part of the refurbishment process, if the bearing shaft is being reworked or replaced, replace the bearings. Otherwise replace bearings as necessary.

**Blades**

Since Halus has already painted the blades for all six turbines, the blades will be inspected within a reasonable timeframe (14 days) from Halus notice that they are available for inspection, using appropriate non-destructive testing ("NDT") techniques (such as ultra sound) by a qualified third party inspection company as per Vestas Specifications  as shown in (Maintenance and Service manual Section 2), (the cost of which will be paid by TDX), and all structural flaws  and damage found (defects which penetrate the gel coat coating), will be repaired or replaced with an alternate set of

matching blades which replacement will comply with Vestas specification. If blades are to be repaired, repair work will be complete by a qualified Fiberglass Blade Specialist, at Halus' expense. In the event that there is a dispute over whether additional repairs are needed based on the results of the NDT testing, the Parties will utilize the services of a qualified, third party expert, to be mutually agreed upon in advance, to make the final determination as to what additional repairs are required. The decision of the third party expert shall be binding on the Parties, and non-appealable. The cost of such expert's services will be borne 50-50 by the Parties.

**Gearbox**

For those gearboxes that Halus has already refurbished, and possibly the remaining gearboxes, TDX will conduct an independent bore scope inspection within a reasonable timeframe (14 days) from Halus notice that they are available for inspection. The results of the tests will be shared with Halus. TDX will pay for the inspections and Halus will cure any defects found, at its cost. In the event that there is a dispute over whether additional repairs are needed based on the inspection results, the Parties will use the same third party expert review procedure set out in the section above on blades.

## Exhibit B

**Delivery Schedule for Six Remanufactured V-27 Turbines.**

Halus shall have all remanufacturing work completed per the Specifications set out in Exhibit A, and the Turbines shall be available for inspection and acceptance by TDX at the Halus facilities no later than on the following schedule.

| Turbine Number | Remanufacturing completed and available for shipment date |
|---|---|
| 1 | 30 days following execution of this Settlement Agreement. |
| 2 | 30 days following invoicing for remanufacturing work on Turbine 1. |
| 3 | 30 days following invoicing for remanufacturing work on Turbine 2. |
| 4 | 30 days following invoicing for remanufacturing work on Turbine 3. |
| 5 | 30 days following invoicing for remanufacturing work on Turbine 4. |
| 6 | 30 days following invoicing for remanufacturing work on Turbine 5. |

**Exhibit C: Product Support Fee Schedule**

Halus Power Systems
2539 Grant Avenue
San Leandro, CA 94579
Tel: (510)278-2212 Fax: (510)278-2211
www.halus.com

Page 1 of 1

## *Product Support Fee Schedule – 2013*

**General consulting/project management**
    Louis Rigaud                                                          $150.000/hr
**Engineering**
    Lindsay Kendall (Mech.Eng.)                                 $110.00/hr
**Technical support**
    Degreed Technical support (bachelor's degree min)   $95/hr
    Lead wind turbine technician                               $85/hr
    Wind turbine technician                                      $55/hr
    Custom Machining                                             $85/hr
    Technical support/General Shop                          $55/hr
    Clerical, Admin                                                $30/hr

Exhibit D: Serial Numbers of Turbines

Turbine serial numbers:

Turbine 1:     3866
Turbine 2:     3900
Turbine 3:     3899
Turbine 4:     6928
Turbine 5:     3992
Turbine 6:     3993

Exhibit E: Original Agreement (Attached)



25352 Cypress Ave, Ste #B
Hayward, CA 94544
Tel: (510)780-0591 ° Fax: (510)780-0534
www.halus.com

### Sales Agreement

This agreement ("Agreement") is entered into by TDX Power Services LLC ("Purchaser") and Halus Power Systems ("Halus"), effective the 20 day of August, 2009 ("Agreement"). Purchaser and Halus are sometimes referred to herein collectively as the "Parties" and individually as a "Party." The Parties agree as follows:

**Purchase and Sale.** Halus agrees to sell, and Purchaser agrees to purchase, six (6) remanufactured Vestas V-27 225 kW 60 Hz 480 volt wind turbines each with 30 meter hub height 3-section flanged tubular towers. This sales agreement is subject to the general conditions attached hereto and made a part hereof.

**Included:**

Six (6) Vestas V-27-225 kW 480 Volt remanufactured wind turbines with blades, controller, and 30 meter hub height tubular towers. ("Turbines").

Six copies of the turbine operations/maintenance and electrical manuals.

Loading and transport frames onto Purchaser supplied transport equipment from Halus facility in Hayward, CA. Containers and or flat racks not included.

Off-site product support as may be requested by Purchaser not to exceed __400__ hours. Additional hours of off-site product support as may be requested by Purchaser shall be charged at $____50____ per hour, which rate is subject to change upon no less than 30 days' prior written notice to Purchaser.

**Not Included:**

Any applicable taxes or duties.

Shipping FOB from Halus facility in Hayward, California, to Purchaser facility.

Transport containers.

Any equipment not specifically identified above, the cost of which shall be negotiated and agreed upon by the Parties as needed.

Any on-site product support, the cost of which shall be negotiated and agreed upon by the Parties as needed.

**Cost and payment terms:**

Turbines will be supplied for a purchase price of $1,848,000 (one million eight hundred forty-eight thousand dollars)(the "Purchase Price"). Halus acknowledges it has already received $192,400 (one hundred ninety-two thousand four hundred dollars) as a down payment toward the Turbines Purchase Price. The remaining balance of the Purchase Price equal to $1,655,600 shall be paid as follows:

1. Purchaser shall pay Halus 30% of the Purchase Price upon execution of this agreement
2. Purchaser shall pay Halus 30% of the Purchase Price when the Turbines are available for inspection at the Halus facility whether or not Purchaser chooses to inspect the turbines. The turbines are expected to be ready for inspection at the Halus facility within 90 days of execution of this Agreement.
3. Purchaser shall pay Halus 20% of the remaining balance due upon completion of remanufacturing.
4. Purchaser shall pay Halus the remaining balance due of 20% of the Purchase Price within 12 months of the date of execution or prior to shipping; whichever occurs first.



25352 Cypress Ave, Ste #B
Hayward, CA  94544
Tel: (510)780-0591 ° Fax: (510)780-0534
www.halus.com

If Halus in unable to have the Turbine prepared for inspection at Halus facility within 120 days of execution of this agreement, 100% of Purchase Price paid to Halus by Purchaser will be refunded to Purchaser by Halus and this Agreement will be rendered null and void.

If Purchaser is unable to accept delivery of Turbines within 540 days from the date of execution of this Agreement, Purchaser agrees to pay Halus a storage fee of $250 per month per turbine commencing on the 541st day from the date of execution of this Agreement that the Turbines are stored on the Halus facility.

### General Conditions:

**Product Support.**   Halus will provide off-site product support as may be requested by Purchaser for up to ___12___ months following delivery of the Turbine to Purchaser.   Product support thereafter shall be at the sole discretion of Halus.   Off-site product support shall include communications by phone, fax, mail, and email, and making Halus' staff available to Purchaser and/or Purchaser's representatives and contractors if they make scheduled visits to Halus facility.

Purchaser acknowledges and agrees that the product support provided by Halus shall be limited to responding to inquiries from Purchaser and Purchaser's representatives and contractors as the remanufacturer and seller of the Turbine and not as a representative or contractor of Purchaser.   Purchaser shall look solely to itself and to its representatives and contractors in connection with the installation and operation of the Turbine, the supervision of all persons at the site other than Halus and its principals and employees, and site safety.   Purchaser agrees to indemnify, defend, and hold harmless Halus and its principals and employees from and against demands, claims, suits, liabilities, losses, or damages of any and every kind, including reasonable attorneys' fees and costs, arising from or relating to the installation or operation of the Turbine not caused solely by the negligence or willful misconduct of Halus or its principals or employees including, without limitation, injuries or losses to persons or property.

**Freight/Title/Risk of Loss/Acceptance.**   All freight, insurance and other shipping expenses shall be paid by Purchaser.   Delivery will be effected, and risk of loss and title to the Turbine and any and all other equipment to be provided to Purchaser under this Agreement will pass to Purchaser, upon Halus' delivery of the Turbine to Purchaser's designated carrier FOB Halus's facility in Hayward, California.   No damage that occurs after Halus' delivery of the Turbine and such other equipment to the carrier shall relieve Purchaser of its obligation to make payments or to comply with any other obligation under this Agreement.   All shipments shall be deemed accepted upon receipt.

**Limited Warranty.**   Contractor warrants to Purchaser that (i) the Turbines as delivered shall comply in all material respects with the specifications and other requirements set forth in the above scope of work, and (ii) shall be free from defects in materials and workmanship (collectively "Defects").   All components of the Turbines shall be warranted against Defects for a period of fifteen months from date Turbines are shipped from Halus facility or in the case where Turbines are stored at Halus facility due to Purchaser preference, for 12 months, starting on the first day of storage (first day of storage starts on the 541st day from the date of execution of this agreement if the Purchaser elects not to accept delivery of the turbines).

Labor costs to repair or replace any parts covered by this warranty are not included.   Repair or Replacement of parts of the Turbines covered by this warranty are included, but shipping costs are subject to the following remote location terms:

a.   Due to the remote location of Purchaser, shipping costs for repair or replacement of parts covered by limited warranty are to be shared between Contractor and Purchaser in the following manner:



25352 Cypress Ave, Ste #B
Hayward, CA 94544
Tel: (510) 780-0591 * Fax: (510) 780-0534
www.halus.com

Contractor will repair or replace defective parts and pay for shipping expenses incurred for covered parts to and from Contractor site and Seattle, WA. Shipping charges for repaired or replaced parts incurred due to warranty coverage from Seattle, WA to Alaska are to be paid by Purchaser.

Purchaser agrees to perform regular scheduled maintenance on the Turbines according to the Vestas maintenance manual, a copy of which shall be provided by Contractor to Purchaser, and also according to any additional harsh climate maintenance guidelines specified in writing by Halus.

Upon notification of a warranty claim, Contractor shall commence repair or replacement of the defective Work within 72 hours of receipt of the claim, and continue the repair/replacement on an uninterrupted basis until the warranty work is completed to the reasonable satisfaction of Purchaser, and the Defect is corrected. In the event that Contractor fails to meet the foregoing obligations, Purchaser shall be authorized to contract with a qualified third party to complete the warranty work, and shall be entitled to bill the cost of same to Contractor. Contractor shall reimburse Purchaser for any such third party costs within 30 days of receipt of Purchaser's invoice and necessary documentation.

  a.    Rights under this limited warranty are not assignable without the approval of Contractor, which approval shall not be unreasonably withheld or delayed.

The Contractor further represents, warrants, and agrees as follows:

(i)    The Turbines, upon completion of re-manufacturing, shall meet the specifications set out in Exhibit A hereto.

*This warranty does not cover:*

a:    Damage to a Turbine or any of its components caused by unauthorized use or service. Purchaser and Contractor shall inspect the Turbines prior to their departure from Contractor's facility in Hayward, California. Pictures of the Turbines shall be taken, and any defects noted in a written report. All such defects shall be corrected prior to shipment, and the corrective actions noted on the report. Upon arrival of the Turbines at the Facility Site, Purchaser and Contractor shall conduct a second inspection of the Turbines to determine if any damage has occurred during transit. Assuming no damage is uncovered, it shall be presumed that the Turbines arrived in the same condition as when they left Contractor's Hayward Facility. If damage is discovered, Contractor shall prepare a written report to Purchaser detailing such damage, and Purchaser shall forward the report to Purchaser's shipper for appropriate action. Contractor shall not be responsible for damage occurring during transit, unless such damage occurred due to improper preparation of the Turbines for shipping.

b.    Damage to a Turbine or any of its components caused by faults relating to the electrical system to which the Turbines are connected, including but not limited to voltage, current and frequency ranges outside those specified in manufacturer (Vestas) product manual.

c.    Damage to Turbines or any of its components caused by acts of God including but not limited to hail, lightning, earthquakes, wind speed, wind shear, or temperatures in excess of operating ranges specified in the original Vestas product documentation (but excluding any damage that could have been prevented by proper operation of Turbine shut off devices), hurricanes, tornados, volcanic eruptions, icing of any kind including but not limited to rime icing.

*Warranty Exclusivity.*    The warranty and remedy set forth above are exclusive and are in lieu of all other warranties and remedies (including, without limitation, any implied warranty of merchantability or fitness for a particular purpose or any implied warranty arising out of course of performance, course of dealing or usage of


**HALUS**
POWER SYSTEMS

25352 Cypress Ave, Ste #B
Hayward, CA 94544
Tel: (510)780-0591 * Fax: (510)780-0534
www.halus.com

trade, each of which are hereby disclaimed). Halus makes no representation or warranty, express or implied, with regard to the Turbine or any product support, results or other items under this Agreement.

**Obtaining Warranty Service.**   In order to obtain warranty service, Purchaser must notify Halus within 15 days after any malfunction. Notice must be provided as set forth below.

**Ownership.** Halus owns the Turbine and all components thereof, free and clear of all claims and liens of third parties; and has full right, power and authority to convey the Turbine to Purchaser without the consent or approval of any third-party.

**Taxes and Duties.**   Purchaser agrees to pay all taxes and duties in connection with the sale and delivery of the Turbine, including, without limitation, sales, use, excise, and value-added taxes, together with any collection costs, penalties and interest which may be assessed in connection therewith, excluding any taxes based on Halus's net income.

**Limitation of Liability.**   HALUS' TOTAL AGGREGATE LIABILITY UNDER THIS AGREEMENT FOR ALL CLAIMS SHALL NOT EXCEED THE PURCHASE PRICE.   IN NO EVENT SHALL HALUS BE LIABLE FOR ANY LOST PROFITS, INTERRUPTION OF SERVICE, LOST BUSINESS, COST OF COVER, OR OTHER SPECIAL, CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES ARISING OUT OF THIS AGREEMENT, HOWEVER CAUSED AND WHETHER ARISING UNDER CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORIES OF LAW, EVEN IF HALUS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**Counterparts and Facsimile.**   This Agreement may be executed in any number of counterparts or by facsimile, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

**Successors and Assigns.**   This Agreement will bind and inure to the benefit of the successors and assigns of the parties; except with the terms of the limited warranty which is specified above.

**Attorneys' Fees.**   If any party to this Agreement commences litigation for the interpretation, enforcement, termination, cancellation or rescission of this Agreement, or for damages for the breach of the same, the prevailing party shall be entitled to its reasonable attorneys' fees and other costs incurred.

**Interpretation.**   This Agreement has been negotiated by the Parties knowledgeable in the matters contained herein and have either consulted with legal counsel, or had the opportunity to do so, and thus, this Agreement is to be construed and interpreted in absolute parity, and shall not be construed or interpreted against any party by reason of their participation in the drafting of the agreement.

**Severability.**   If any term or provision of this Agreement shall be determined to be illegal or unenforceable, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of the parties, and all other terms and provisions in this agreement as well as the Agreement shall nevertheless remain in full force and effect.

**Exercise of Remedies.**   No failure on the part of a Party to exercise and no delay in exercising any right or remedy hereunder, at law or equity, shall operate as a waiver thereof.

**Force majeure.** No Party will be liable for default of any obligation hereunder other than the payment of money if such default results from governmental acts or directives, strikes, shortage of supplies, war, riot or civil



25352 Cypress Ave, Ste #B
Hayward, CA 94544
Tel: (510)780-0591  Fax: (510)780-0534
www.halus.com

commotion, fires, floods, earthquakes, water damage or any other similar cause beyond such Party's reasonable control.

**Notice/Contact Info:** Unless notified in writing of a change, the contact info below shall apply for each Party. All notices required hereunder shall be in writing and be deemed to have been given when sent by registered or certified mail, postage prepaid and addressed to the last known address of the Party being notified.

a.   Halus:        HALUS POWER SYSTEMS
                   Attn: Mr. Louis Rigaud
                   25352B Cypress Avenue
                   Hayward, California 94544, U.S.A.
                   service@halus.com (for service/warranty inquiries only)
                   Phone (510-780-0591)

b.   Purchaser:    TDX Power Services, LLC
                   4300 "B" Street, Suite 402
                   Anchorage, Alaska

**Entire Agreement:** This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, negotiations and communications with respect thereto, whether oral or written, including, without limitation, any purchase order submitted by Purchaser. This Agreement may not be modified except in writing, signed by both parties.


Accepted:                          Accepted:    Halus Power Systems
        Purchaser                               Halus

By/Title: NICK GOODMAN, CEO        By/Title:    Louis Rigaud – Principal
Signature: Nick Goodman            Signature:

Date: 8-30-2009                    Date: August 30, 2009

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF SONOMA

3

     I am employed in the County of Sonoma, State of California.  I am over the age of 18 and not a party to the within action: my business address is 50 Santa Rosa Avenue,

4

Suite 200, Santa Rosa, California 95404-4952.  On the date below indicated, I served on the interested parties in this action the within documents described as:

5

6

**NOTICE OF SETTLEMENT AND JURISDICTION OF THE COURT TO ENFORCE SETTLEMENT AND STIPULATION TO CONTINUE JURISDICTION OF THE COURT**

7

**X**     **(BY ELECTRONIC SERVICE)** I caused such document to be electronically served by filing said document electronically in accordance with rules of electronically filing

8

documents.  See Local Rule 5-135(a); Fed. R. Civ. P. 5(b)(2)(D).

9

Mitchell B. Greenberg, Esq.     Attorneys for Plaintiff
Stephanie Walker, Esq.     TDX Power Services, LLC,

10

Abbey, Weitzenberg, Warren & Emery     An Alaska Limited Liability Company
100 Stony Point Rd., Suite 200

11

P.O. Box 1566
Santa Rosa, CA 95402-1566

12

Tel: 707-542-5050
Fax: 707-542-2589

13

14

**X**     **(BY MAIL)** by placing the true copies thereof enclosed in sealed envelopes, postage prepaid, addressed as noted below.  I caused such envelope to be

15

deposited in the mail at Santa Rosa, California 95404.  The envelope was mailed with postage thereon fully prepaid.  I am 'readily familiar' with our firm's practice of

16

collection and processing correspondence for mailing.  It is deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware

17

that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in

18

affidavit.

19

Law Offices of Robert J. Rauch     Attorneys for Plaintiff
Robert J. Rauch, Esq.     TDX Power Services, LLC

20

1159 Chuckanut Ridge Drive     An Alaska Limited Liability Company
Bow, WA 98232

21

Tel: 360-766-4140
Fax: 360-766-5022

22

23

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct, and that this declaration was executed on July 25, 2013, at

24

Santa Rosa, CA.

25

_____
RoseAnne Powell

26

27

28

3

NOTICE OF SETTLEMENT AND STIPULATION TO CONTINUE JURISDICTION OF THE COURT TO ENFORCE SETTLEMENT